OPINION
{¶ 1} Defendant, Andrew Locklin, appeals from his conviction and sentence for domestic violence.
 {¶ 2} On the evening of March 22, 2004, Aisha Muqtadir placed a 911 call to Dayton police from her home at 1966 Rugby Road in Dayton. Muqtadir reported that Defendant, who is her ex-boyfriend and the father of her daughter, had assaulted her. When Officers Wolpert and Beavers arrived at Muqtadir's home they discovered that she was crying and very upset, and that her left eye was swollen shut and blood was coming out of that eye. Muqtadir told the officers that Defendant came to her house to pick up his clothes and started hitting her for no reason.
 {¶ 3} Officers Wolpert and Beavers took Muqtadir to Good Samaritan Hospital for treatment. Muqtadir told the nurse who evaluated her that she had been assaulted by her boyfriend or ex-boyfriend. Police took photographs of Muqtadir's injuries and wrote down her oral statement, which Muqtadir signed.
 {¶ 4} Defendant was indicted on one count of domestic violence in violation of R.C. 2919.25(A). The matter was tried to a jury. At trial Muqtadir recanted her earlier statements to police and claimed that Defendant had not assaulted her. Rather, Muqtadir testified that she got into a fight with an unknown woman who came to her home with Defendant, and because Muqtadir was angry that Defendant brought another woman to her home she told police Defendant had assaulted her. The jury nevertheless found Defendant guilty. The trial court sentenced Defendant to a seventeen month prison term.
 {¶ 5} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 6} "TRIAL COURT COMMITTED ABUSE OF DISCRETION WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR A MISTRIAL AFTER AN UNADMITTED EXHIBIT WAS REVIEWED BY THE JURY."
 {¶ 7} At the close of all the evidence the State agreed to withdraw three exhibits it had offered in evidence: State's Exhibit 3B, a printout of the time and date of the 911 call made by Muqtadir, including a brief summary of the call; State's Exhibit 5, a copy of Muqtadir's treatment records from Good Samaritan Hospital; and State's Exhibit 6, Muqtadir's statement to police about the incident that had been reduced to writing by Officer Wolpert and signed by the victim. These three unadmitted exhibits had been placed at the bottom of a pile of exhibits that were admitted, and were mistakenly picked up and taken back to the jury room with the admitted exhibits and delivered to the jury for their review during deliberations. When the court reporter later discovered the mistake while looking for the unadmitted exhibits, she went to the jury room and retrieved these three unadmitted exhibits, which at the time were being examined by some of the jurors. The court reporter then brought the matter to the trial court's attention. The trial court contacted counsel and the matter was discussed in chambers.
 {¶ 8} Defendant moved for a mistrial. The trial court denied his request. The court concluded that although it was error to allow the jury to consider the exhibits because they had not been admitted into evidence, that error was harmless because the information contained in the three unadmitted exhibits was presented to the jury through witness testimony, and the exhibits therefore contained nothing new. Both parties agreed that the three unadmitted exhibits should just be returned to the jury without explanation or comment, which is what the trial court did.
 {¶ 9} After the jury returned its guilty verdict, Defendant renewed his request for a mistrial in a motion to set aside the verdict. The trial court overruled that request on the same grounds as before: that the unadmitted evidence was merely cumulative or repetitive of other evidence introduced at trial, and thus the error in giving that unadmitted evidence to the jury was harmless.
 {¶ 10} Defendant argues that the trial court abused its discretion in overruling his motion for a mistrial.
 {¶ 11} Mistrials should be declared only when the ends of justice require it and a fair trial is no longer possible. Statev. Garner, 74 Ohio St.3d 49, 1995-Ohio-168. The grant or denial of an order of mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Id. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 12} When unadmitted evidence is mistakenly submitted to a jury, if that evidence is repetitive or cumulative of other evidence introduced at trial, the error is harmless. State v.Cooper (1977), 52 Ohio St.2d 163; State v. Grant,67 Ohio St. 3d 465, 1993-Ohio-171. If, on the other hand, the unadmitted exhibits do not duplicate other evidence admitted at trial, and they prejudice the Defendant, and the evidence of defendant's guilt is not overwhelming, then the conviction cannot stand.State v. Westwood (May 15, 2002), Athens App. No. 01CA50, 2002-Ohio-2445.
 {¶ 13} Regarding State's Exhibit 3B, the printout of the victim's 911 call, the tape of that call was played for the jury and admitted into evidence, and Muqtadir identified her voice on the tape. The printout added nothing new for the jury to consider and was merely cumulative or repetitive of other evidence properly admitted. Defendant concedes in his appellate brief that the error in giving State's Exhibit 3B to the jury was harmless and did not prejudice him.
 {¶ 14} With respect to State's Exhibit 6, the statement the victim made to police that was reduced to writing by Officer Wolpert and signed by the victim, although the victim did not testify about the contents of that statement, the officer who took the statement did, without objection from Defendant. Officer Wolpert specifically testified about what the victim told him had happened to her, and that he wrote it down, read it back to her, and that she signed it. Thus, the information contained in State's Exhibit 6 was presented to the jury by way of Officer Wolpert's testimony, and State's exhibit 6 added nothing new for the jury to consider and was merely cumulative and repetitive of other evidence presented at trial. Accordingly, the error in giving State's Exhibit 6 to the jury was harmless.
 {¶ 15} With respect to State's Exhibit 5, the victim's medical records from Good Samaritan Hospital, Defendant argues that this exhibit was not merely cumulative to other evidence presented at trial, such as photographs of the victim's injuries, because the exhibit contained a statement by the victim that her boyfriend had punched her in the face and eye.
 {¶ 16} During the trial both the police officer who first responded to the scene, Wolpert, as well as the nurse at the hospital who triaged the victim, David Geary, testified about the injuries they observed on the victim. Both witnesses also identified photographs that were taken of those injuries, State's Exhibit 4, and the victim herself testified that those photographs accurately depicted her injuries and condition. Furthermore, both Wolpert and Geary testified that the victim told them who inflicted her injuries. The victim told Officer Wolpert and the police dispatcher during her 911 call that Defendant assaulted her. The victim told David Geary that her boyfriend or ex-boyfriend caused her injuries. Therefore, the information contained in State's Exhibit 5 was largely cumulative and repetitive of other exhibits and testimony presented at trial, and the error in giving State's Exhibit 5 to the jury was harmless.
 {¶ 17} Defendant's reliance upon State v. Westwood, supra,
is misplaced. Here, unlike in Westwood, in which other act evidence was mistakenly given to the jury, the unadmitted exhibits that were mistakenly given to the jury are cumulative and repetitive of other evidence presented at trial. Moreover, the unadmitted exhibits here link Defendant to this offense, not some unrelated, uncharged offense, as in Westwood.
 {¶ 18} Contrary to Defendant's assertion, there is substantial if not overwhelming evidence of Defendant's guilt.
The victim identified Defendant as her assailant during her conversations with three different people; the 911 dispatcher, Officer Wolpert, and nurse David Geary. While the victim's testimony at trial recanting her earlier statements that Defendant had assaulted her creates a conflict in the evidence and raises an issue concerning the credibility of the victim's trial testimony and the weight to be given to it, these are matters for the trier of facts, the jury here, to resolve. Statev. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 19} On this record, we conclude that the unadmitted exhibits mistakenly given to the jury were cumulative and repetitive of other evidence adduced at trial and that, in light of the substantial evidence of Defendant's guilt, the error was harmless and did not prejudice Defendant. The trial court did not abuse its discretion in denying Defendant's motion for a mistrial.
 {¶ 20} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 21} "APPELLANT WAS DENIED DUE PROCESS, AS THE VERDICT WAS AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 23} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 24} Defendant was convicted of knowingly causing physical harm to a family or household member in violation of R.C.2919.25(A). Physical harm means any injury, regardless of its gravity or duration. R.C. 2901.01(A)(3). The natural parent of any child of whom the offender is the other natural parent qualifies as a family or household member. R.C. 2919.25(F)(1)(b).
 {¶ 25} "Knowingly" is defined in R.C. 2901.22(B):
 {¶ 26} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 27} The evidence presented by the State demonstrates that in her 911 call to police, Muqtadir identified Defendant as the man who assaulted her. Additionally, Officer Wolpert and Nurse Geary both testified that Muqtadir told them Defendant had caused her injuries when he punched her in the face and eye. A birth certificate, State's Exhibit 2, showing Defendant is the father of Muqtadir's daughter, coupled with Muqtadir's testimony that she and Defendant are the parents of a child, demonstrate that Muqtadir qualifies as a family or household member. Photographs of Muqtadir's facial injuries, State's Exhibit 4, coupled with the personal observations of Officer Wolpert and Nurse Geary demonstrate that Muqtadir suffered physical harm.
 {¶ 28} Viewing this evidence in a light most favorable to the State, a rational trier of facts could find all of the essential elements of domestic violence proved beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 29} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 30} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 31} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 32} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id. at p. 4.
 {¶ 33} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 34} Defendant argues that his conviction is against the manifest weight of the evidence, because at trial Muqtadir recanted her earlier statements that Defendant assaulted her and caused her injuries. Muqtadir testified at trial that she got into a fight with Defendant's new girlfriend when he brought her to Muqtadir's home, and that Muqtadir falsely accused Defendant of causing her injuries because she was angry with him for bringing his new girlfriend to her home.
 {¶ 35} By its guilty verdict, the jury was obviously not convinced that Muqtadir accused Defendant falsely and was trying to make things right at trial. In that regard, the credibility of the victim and the weight to be given to her trial testimony were matters for the trier of facts to resolve. DeHass, supra. The jury did not lose its way simply because it chose to believe Muqtadir's statements to police and medical personnel shortly after this incident happened, rather than her recantations at trial over one year later.
 {¶ 36} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 37} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 38} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 39} In order to demonstrate ineffective assistance of trial counsel a Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 40} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance.Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.Id.
 {¶ 41} At trial, after Muqtadir recanted her earlier statements to police that Defendant had caused her injuries by hitting her in the face, Officer Wolpert testified about statements Muqtadir made to him when Wolpert arrived on the scene in response to Muqtadir's 911 call. This evidence was offered to impeach Muqtadir with her prior inconsistent statements. Defendant argues that his trial counsel performed deficiently because he failed to object to Wolpert's testimony because it was hearsay and not admissible under either Evid.R.801 (D)(1)(a) or 613(B).
 {¶ 42} The State responds that defense counsel did not perform deficiently by failing to object because Evid.R. 613(B) permits admission of extrinsic evidence of a prior inconsistent statement when the witness cannot remember making the prior statement. State v. Farris (Nov. 5, 2004), Clark App. No. 2003-CA-77, 2004-Ohio-5980. In this case Muqtadir claimed at trial that she could not remember what she had told Officer Wolpert.
 {¶ 43} A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.Strickland, supra, at 697; Bradley, supra, at 143; State v.Scott (May 7, 1992), Cuyahoga App. No. 60535. If an ineffective claim is more readily rejected for lack of sufficient prejudice, that alternative should be followed. Id.
 {¶ 44} Defendant argues that without the testimony of Officer Wolpert reciting what Muqtadir had told him about how Defendant assaulted her, there would be no proof that Defendant committed the crime charged. We disagree. The jury knew from listening to the tape of the 911 call Muqtadir made to police that she identified Defendant as the person who assaulted her. Furthermore, the jury additionally learned from the testimony of nurse David Geary that Muqtadir indicated to him that Defendant was the person who punched her in the eye, causing her injuries. Accordingly, there is no reasonable probability that had Officer Wolpert not testified about the statements Muqtadir made to him concerning this incident, Defendant would instead have been acquitted. Therefore, no prejudice resulting from counsel's alleged deficient performance has been demonstrated, and ineffective assistance of counsel has not been shown.Strickland.
 {¶ 45} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, J. And Wolff, J., concur.