OPINION
{¶ 1} Defendant, Willie Feaster, appeals from his convictions for unlawful sexual conduct with a minor and importuning and the sentences imposed on those offenses.
 {¶ 2} On Saturday, March 4, 2006, forty-seven year old Willie Feaster took a fourteen year old girl he had known for four weeks, E.E., to the Red Roof Inn in Butler Township, *Page 2 
where they engaged in various sex acts throughout Saturday night and into Sunday morning. On Sunday morning, Feaster took E.E. to church in Springfield, and then Feaster took E.E. to Welcome Stadium in Dayton, where he allowed E.E. to drive his car. Dayton police arrived on the scene and stopped Feaster's vehicle while E.E. was driving. E.E. told police that Feaster was her boyfriend. Dayton police took E.E. home.
 {¶ 3} E.E. told her mother what had happened between E.E. and Feaster. Butler Township police were called and they collected E.E.'s clothing and underwear. A sexual assault examination was performed on E.E. at Miami Valley hospital. Tests performed by the Miami Valley Regional Crime Lab revealed the presence of semen on E.E.'s pajama bottoms and in the crotch of her underwear. Semen was also discovered on a washcloth in Feaster's room at the Red Roof Inn. No semen was found on E.E.'s vaginal and rectal swabs. The crotch of E.E.'s underwear contained semen which had a mixed DNA profile, with Feaster being the major contributor to that profile. Feaster denied having any sexual contact with E.E., and he claimed that they were just friends and that she stayed with him on Saturday nights so she could go to church with him on Sunday mornings. *Page 3 
 {¶ 4} Feaster was indicted on four counts of unlawful sexual conduct with a minor, R.C. 2907.04(A), (B)(3), one count of rape, R.C.2907.02(A)(2), and one count of importuning, R.C. 2907.07(B). Feaster waived his right to counsel and elected to represent himself at trial. Following a jury trial Feaster was found not guilty of the rape charge but guilty on all of the other counts. The trial court sentenced Feaster to a combination of concurrent and consecutive prison terms totaling ten years and nine months.
 {¶ 5} We granted Feaster's request for leave to file a delayed appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 6} "THE TRIAL COURT ERRED WHEN IT FAILED TO RULE UPON APPELLANT'S MOTION FOR INDEPENDENT DNA TESTING THUS DENYING APPELLANT DUE PROCESS OF LAW UNDER THE FEDERAL AND STATE CONSTITUTION."
 {¶ 7} Three weeks prior to trial, Defendant filed a motion requesting independent testing of the DNA discovered in the victim's underwear. The trial court never ruled on that request for independent DNA testing. Defendant now raises that issue for the first time on appeal, and argues that the trial court's failure to rule on his motion violates Crim.R. 12(F) and denied him due process of law. *Page 4 
 {¶ 8} The DNA taken from the semen found in E.E.'s underwear was a mixed profile involving more than one donor, with Defendant being the major contributor. A forensic scientist from the Miami Valley Regional Crime Lab, Amy Wunderlich, testified that the likelihood of someone other than Feaster being the major contributor to that mixed DNA profile was one in fifty-seven quintillion. Wunderlich further testified that in sexual assaults it is common to obtain mixed DNA profiles because the victim's DNA is also present. Wunderlich did not determine the identity of the other donor in the mixed DNA profile in this case. Defendant argues that the trial court's failure to grant his motion for independent DNA testing in order to determine the identity of the other, unknown donor deprived him of due process of law. We disagree.
 {¶ 9} Although the trial court erred in failing to rule before trial upon Feaster's pretrial motion for independent DNA testing, State v.Tolbert (1990), 70 Ohio App.3d 372; Crim.R. 12(F), Feaster waived any error by failing to bring that matter to the trial court's attention at a time when any error could have been avoided or corrected. State v.Eley, 77 Ohio St.3d 174, 179, 1990-Ohio-323; State v. Williams (1977),51 Ohio St.2d 112. The error is nevertheless subject to *Page 5 
review for plain error. Crim.R. 52(B). In order to be plain, the error must have affected a defendant's "substantial rights." Id. To satisfy that standard, the error must have affected the outcome of the trial.State v. Barnes (2002), 94 Ohio St.3d 21.
 {¶ 10} Feaster's defense at trial was that he did not engage in sexual conduct with E.E. However, E.E.'s testimony at trial, coupled with the fact that Feaster's DNA was found in semen discovered in the crotch of E.E.'s underwear, conclusively establishes that Feaster did engage in sexual conduct with E.E.
 {¶ 11} Although the DNA profile from E.E.'s underwear was a mixed profile, because there was more than one donor, DNA tests conclusively proved that Feaster was the major contributor. Feaster does not even suggest, much less demonstrate, how independent DNA testing would help prove that he did not engage in sexual conduct with E.E.
 {¶ 12} Even if the other unknown contributor to that mixed DNA profile was not the victim, E.E., that would at best demonstrate that E.E. had sex with someone in addition to Feaster. It would in no way demonstrate that Feaster did not also engage in sex with E.E. Accordingly, even had the trial court granted Feaster's motion for independent DNA testing, *Page 6 
there is no reasonable possibility that it would have affected the outcome of this trial. Therefore, the trial court's error in failing to rule upon Feaster's pretrial motion for independent DNA testing is harmless beyond a reasonable doubt.
 {¶ 13} Feaster's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 14} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL."
 {¶ 15} Prior to closing arguments the trial court indicated to the parties that, earlier that day, several newspapers had been found and removed from the jury room by the bailiff. Those newspapers contained an article about this case which referred to Feaster's prior criminal record and mentioned the fact that Feaster had been acquitted of murder in 2002. Feaster asked the trial court to question the jurors about whether they had read the article. When the trial court did that, seven jurors indicated that they had seen the article. The trial court then voir dired each of those seven jurors separately in chambers, allowing Feaster to participate in the questioning.
 {¶ 16} One juror did not remember anything at all about what the article said. Another juror only remembered that the article said Feaster had attended some Dayton City commission *Page 7 
meetings. Most of the other jurors remembered that the article mentioned Feaster's prior criminal record, about which Feaster himself had testified earlier that day. Only one juror, Mr. Maul, remembered anything about information contained in the article that Feaster had been acquitted of aggravated murder in 2002, which was not brought out during testimony in the courtroom. All of the jurors unanimously stated that they had not formed any opinions about this case or Feaster's guilt or innocence as a result of the newspaper article, and that they could fairly and impartially decide this case based only upon the testimony and exhibits presented in the courtroom.
 {¶ 17} Feaster moved for a mistrial, but the trial court overruled that motion. As a cautionary measure, however, the trial court replaced juror Maul, the only juror who had learned information from the newspaper article that had not been presented in court, with an alternate juror. Feaster complains in this assignment of error that the trial court abused its discretion in denying his motion for a mistrial.
 {¶ 18} In State v. Locklin, Montgomery App. No. 21224, 2006-Ohio-3855, this court observed:
 {¶ 19} "{¶ 11} Mistrials should be declared only when the ends of justice require it and a fair trial is no longer *Page 8 
possible. State v. Garner, 74 Ohio St.3d 49, 1995-Ohio-168. The grant or denial of an order of mistrial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Id. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151."
 {¶ 20} Juror exposure to information about a defendant's prior convictions or to news accounts of the crime with which he is charged do not presumptively deprive the defendant of due process. Murphy v.Florida (1975), 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed2d 589. It is not required that jurors be totally ignorant of the facts and issues involved in the case. Id. It is sufficient if the juror can lay aside his or her impression or opinion and render a verdict based solely upon the evidence presented in court. Id.
 {¶ 21} The voir dire of each juror exposed to the newspaper article in question reveals that none of the jurors who returned guilty verdicts on the offenses of which Defendant was convicted learned any information from the newspaper articles that had not been presented in court via witness testimony. More importantly, each juror vowed to remain *Page 9 
impartial and to consider only the evidence that was presented in court in arriving at a verdict. Under the totality of these facts and circumstances, Feaster has not demonstrated that the jury was not fair and impartial, or that he suffered prejudice as a result. Therefore, we cannot find that the trial court abused its discretion in denying Feaster's motion for a mistrial.
 {¶ 22} Feaster's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 23} "THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO MORE THAN THE MINIMUM SENTENCE."
FOURTH ASSIGNMENT OF ERROR
 {¶ 24} "THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES ON THE APPELLANT."
 {¶ 25} Defendant argues in these related assignments of error that the trial court abused its discretion in sentencing him to greater than minimum prison terms and ordering those prison terms to be served consecutively for a total aggregate sentence of ten years and nine months, because such a sentence is too harsh in view of the fact that no use of force, physical brutality, or a position of authority over the victim was shown.
 {¶ 26} Defendant's convictions on the four counts of *Page 10 
unlawful sexual conduct with a minor are felonies of the third degree, R.C. 2907.04(B)(3), for which the possible penalty is a prison term of one, two, three, four or five years. R.C. 2929.14(A)(3). The trial court sentenced Defendant to two years each on counts one and two, to be served concurrently to each other. The court sentenced Defendant to four years each on counts three and four, which are to be served consecutively to each other and counts one and two. Defendant's conviction for importuning is a felony of the fifth degree, R.C.2907.07(F), for which the possible penalty is a prison term of six to twelve months. R.C. 2929.14(A)(5). The trial court sentenced Defendant to a nine month prison term, to be served consecutively to the other counts.
 {¶ 27} In imposing its sentence the trial court noted that it had considered the seriousness and recidivism factors, R.C. 2929.12, and the nature of the offense which includes the fact that Feaster, a forty-seven year old man, spent the night in a motel room with a fourteen year old girl and engaged in multiple sex acts with her. The trial court afforded Feaster his right of allocution, Crim.R. 32(A), and observed that Feaster has prior convictions for breaking and entering, robbery, inducing panic, disorderly conduct, and convictions in Georgia for criminal trespass and theft. Defendant has *Page 11 
been to prison on at least two previous occasions. Defendant blames the victim for what occurred, rather than taking responsibility for his own conduct. The court stated that a minimum sentence would demean the seriousness of these offenses.
 {¶ 28} After State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the appellate court's standard of review when examining felony sentences is an abuse of discretion. State v. Slone (January 12, 2007), Greene App. No. 2005CA79, 2007-Ohio-130. That standard connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court.State v. Adams (1980), 62 Ohio St.2d 151. Ordinarily, a trial court does not abuse its discretion when it imposes a sentence within the permissible range authorized by R.C. 2929.14(A). State v. Cowan,167 Ohio App.3d 233, 2006-Ohio-3191, at ¶ 22.
 {¶ 29} Per Foster, the trial court had full discretion to impose any sentence within the statutory authorized range of punishments for felonies of the third and fifth degree, and the court was not required to make any findings or give its reasons for imposing maximum, consecutive, or more than minimum sentences. The trial court's more than minimum and consecutive sentences in this case are neither contrary to law *Page 12 
nor an abuse of discretion.
 {¶ 30} Feaster's third and fourth assignments of error are overruled. The judgment of the trial court will be affirmed.
 WOLFF, P.J. And FAIN, J., concur. *Page 1